185 N.W.2d 866 (1971)
186 Neb. 690
SIOUX CITY AND NEW ORLEANS BARGE LINES, INC., Appellee, Cross-Appellant,
v.
BOARD OF EQUALIZATION OF DOUGLAS COUNTY, Nebraska, Appellant, Cross-Appellee,
City of Omaha, a Municipal Corporation et al., Intervenors-Appellees, Cross-Appellants.
No. 37669.
Supreme Court of Nebraska.
April 16, 1971.
Donald L. Knowles, County Atty., Arthur D. O'Leary, Chief Deputy Co. Atty., Paul F. Peters, Deputy County Attorney, Omaha, for appellant.
Young, Baird, Holm, McEachen, Pedersen, Hamann & Haggart, Omaha, for appellee.
Herbert M. Fitle, City Atty., Frederick A. Brown, Edward M. Stein, John B. Abbott, Kent N. Whinnery, Verne W. Vance, Allen L. Morrow, George S. Selders, Jr., James E. Fellows and Thomas F. Dowd, Omaha, for intervenors-appellees.
Heard before WHITE, C. J., and CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN and NEWTON, JJ.
*867 McCOWN, Justice.
The Douglas County assessor attempted to tax the value of improvements located on the Missouri River port and terminal area owned by the City of Omaha. The assessment was for the years 1966, 1967, and 1968, and was made against the plaintiff, Sioux City and New Orleans Barge Lines, Inc. The Board of Equalization of Douglas County upheld the assessor's action and the plaintiff appealed to the district court. The City of Omaha and the Dock Board of the City of Omaha intervened in the appeal in the district court. The district court entered an order in favor of the plaintiff and the interveners and decreed that the improvements were owned by the City of Omaha and were exempt from taxation. The Board of Equalization of Douglas County has appealed.
On April 13, 1965, an agreement was entered into between the Dock Board of the City of Omaha and Sioux City and New Orleans Barge Lines, Inc. The agreement applied to most of the land comprising the Missouri River port and terminal area of the City of Omaha, as described in the agreement. The agreement was for an initial term of 15 years with an option to the barge line to renew for a second 15-year period. In 1967, the agreement was amended to grant to the barge line an additional 15-year option and the right to assign the agreement to subsidiaries or as security for loans.
At the time the agreement was entered into, there were improvements of substantial value located on the port and terminal area, including some storage and warehouse facilities. In the agreement the barge line agreed to provide warehousing space sufficient and adequate in size to handle, protect, store, and house cargo, freight, and other traffic which might flow through the port and terminal, together with an office building to constitute the terminal office. Any capital improvements on the port area, including specifications and location, required the approval of the dock board. Title, ownership, and equity in any buildings, storage tanks, or other improvements of any kind, were vested and remained in the City of Omaha under the agreement.
The barge line was to have the supervision, control, management, and jurisdiction of the port area and of the improvements constructed in the port area, except for the portions occupied by two tenants of the City, one of which operated the grain handling and storage facilities in the port area. The other operated some liquid tank and storage facilities.
The port buildings and facilities were to be operated and maintained by the barge line. The barge line was to comply fully with state and federal laws, rules, and regulations, or legislation governing the operation of the port area. Rules and regulations were to be prepared by the barge line for the operation of the port area which were required to be approved by the dock board and the dock board would then promulgate those rules. The barge line was required to issue a terminal service bulletin listing all rates, fees, charges, and wharfage, and all such charges were required to be approved by the dock board. All of the rates and charges were required to be applied uniformly and without discrimination. All facilities at the terminal area are open to the public. The barge line was to provide all services and all of the fees and charges were to be paid to it.
The rental payments to be made by the barge line to the dock board were based solely upon the gross tonnage loaded, unloaded, handled, lifted, or moved in the port area. The charges were applicable only once on any and all freight and were based on the first or initial handling in the port area, including warehousing. For rental purposes, there was a minimum tonnage requirement of 100,000 tons per year.
The barge line was required to employ sufficient and adequate personnel in the port area for the efficient loading, unloading, storage, handling, and transferring of *868 cargo and the efficient operation of the port and terminal. The barge line was required to furnish certificates of insurance for public liability, and for fire and extended coverage upon all capital improvements, equipment and machinery. The barge line and the dock board and city were to be named as assureds. In the event of any casualty damage to buildings, the proceeds of insurance were to be used to rebuild or repair.
The dock board warranted that the leasehold interest of the barge line under the agreement, including all improvements then located or later constructed on the land, should not be subject to ad valorem taxes against such land and improvements by the state or any political subdivision. If any such taxes were levied and assessed, the barge line was granted an offset and deduction from any rental payments due under the agreement. The tax warranty applied only to land and improvements, the title to which was in the City of Omaha or the dock board. It did not apply to personal property titled in and owned by the barge line.
Either party to the agreement was given the right to terminate it for failure of the other party to perform its covenants, provided default continued for a period of 30 days after written demand for performance was given to the other party.
It might fairly be said that the 50-paragraph agreement, as well as the testimony, reflect both a management agreement and a lease agreement with elements of each intermixed.
The district court adjudged and decreed that the improvements designated as omitted personal property by the county assessor were owned by the City of Omaha and were exempt from taxation. It also decreed that the provisions of section 77-1209, R.R.S.1943, did not apply.
The primary issue is whether the tangible property here may be taxed by governmental subdivisions of Nebraska. Article
VIII, section 2, of the Constitution of Nebraska, provides in part: "The property of the state and its governmental subdivisions shall be exempt from taxation." The county board of equalization bases its claim to tax here upon section 77-1209, R.R.S.1943, which provides in part: "All improvements put on leased public lands shall be assessed to the owner of such improvements as personal property, together with the value of the lease, and listed and assessed as such in the place where the land is situated." The attempt to apply that statute to taxation of the property here rests upon an interpretation of Offutt Housing Co. v. County of Sarpy, 160 Neb. 320, 70 N.W.2d 382, aff'd. 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151.
The City of Omaha is, of course, a governmental subdivision of the State of Nebraska, and so is the Dock Board of the City of Omaha, which is a separate and distinct body corporate and politic. See, sections 18-701 to 18-716, R.R.S.1943. The dock board has exclusive charge and control of all harbor and water terminal structures, facilities, and appurtenances, including the building, rebuilding, alteration, repairing, operation, and leasing of such property. Section 18-705, R.R.S.1943.
The dock board has the power to perform its statutory duties "whether the same shall be done by the board or by others" and has power to employ harbor masters, managers, and other employees as may be necessary for the efficient and economical performance of its statutory duties outlined in sections 18-701 to 18-716, R.R.S.1943.
The critical distinction between the case before us and the Offutt Housing Co. case rests on the fact that no constitutional exemption from taxation under the Constitution of Nebraska was involved in the Offutt case. The United States had waived any immunity or exemption from taxation granted under the Enabling Act and ceding statutes, and had specifically granted to the state the right to tax the interests of the lessee. There was no constitutional exemption *869 under the Nebraska Constitution. In the Offutt case, the lease was for 75 years, while the estimated useful life of the improvements placed on the premises was only 35 years. The Offutt case determined that under such circumstances, the value of the leasehold interest was measured by the total value of the improvements where the lessee would obtain for its private purposes the entire value of all improvements before the termination of the lease. The interest of the lessee in the real estate was mortgaged as real estate with the consent of the United States and under a federal loan.
In the case before us, the agreement is clear and undisputed that title and ownership of all of the land and all of the improvements is and will remain at all times in the City of Omaha, and there is no showing as to the estimated useful life of any of the improvements. In the attempt to tax the improvements here, Douglas County made no distinction between improvements constructed and paid for by the dock board and those constructed and paid for by the barge line. Neither did the agreement make any such distinctions in fixing title and ownership. In the case before us it is also clear that the agreement of April 13, 1965, was intended to, and did, carry out the statutory public powers and duties of the dock board. It cannot be accurately said that the land and improvements here were used solely for the private benefit of the barge line. All of the facilities in the port area were open to the public and the promotion of their use was also in furtherance of the statutory obligations placed upon the Dock Board of the City of Omaha.
We hold that the improvements attempted to be taxed as personal property here were owned by the City of Omaha, and that Sioux City and New Orleans Barge Lines, Inc. was not the "owner" of such improvements within the meaning of section 77-1209, R.R.S.1943.
From the foregoing holding, it follows that the improvements here involved were under the control and supervision of the Dock Board of the City of Omaha and were the property of the city. As such property it was exempt from taxation under the provisions of Article VIII, section 2, Constitution of the State of Nebraska.
The judgment of the district court was correct and is affirmed.
Affirmed.